I'm guessing that the issue the Court is most interested in is whether or not there was proximate cause for the direct proximate link to the restitution amount. Yeah. I am interested in that issue, but I guess I'd ask you first, what is the standard? You say proximate cause. Is that really what the standard is?  Well, we know someone was harmed. Isn't the question whether or not there's a reasonable connection between your client's wrongdoing and that harm? I mean, we're not dealing here with Cardozo's definition of proximate cause, are we? No. No. No, we're not. Let me just – because I don't think the facts are disputed, at least with respect to this. No, they're not. Let me just make sure I have them right. Mr. Swor and Mr. Two Feathers have this illegal scheme. They meet with Mr. Schultz together and pitch the scheme. Mr. Schultz then later agrees but never comes through with the notion that he's going to put up a land worth $50,000 or a deed worth $50,000, correct? No, not quite. What the facts are is that Swor and Schultz were both had been hard money lenders and knew each other because they were both in the same business. Right. And Swor introduces Schultz to Two Feathers. Exactly. But that's the end of it. Well, I'm not sure it's the end of it. Let me tell you what I understand the record shows, and you tell me whether I'm wrong. He introduces Schultz to Two Feathers, and I think because he pleaded guilty, what we can assume from this record is that he did so with some sort of malice of forethought. He intended to get Schultz involved in this illegal scheme. Two Feathers then tries to persuade him at that meeting and thereafter to put up $50,000, and that appears to fall through. And then about four months later, Two Feathers meets with Schultz without Swor and persuades him to put $200,000 into the scheme. That's a fair statement of what happened? That's fair, yes. But except that in the middle there, Swor and Two Feathers are completely part of the company, and the second $200,000 was to involve a scheme that Swor was not involved in. That's right. He had no part in that. And wasn't the same scheme either in terms of its ---- No. It was different. So the second scheme involved a thing with Treasury bonds and with a deal in Bermuda with a separate deal, and Swor was not involved in that at all. And I understand that. So here's my question. I mean, we'll go back to what the legal standard is. Your guy introduces Schultz to somebody who defrauds him, and he introduces him to Schultz with the intention that Two Feathers defraud him or at least involve him in an illegal scheme. The first one doesn't work out, and so Two Feathers on his own puts the guy into a separate illegal scheme. Why isn't that sufficient to call for restitution? Well, I think what the statute says is directly harm. And I don't think that in this case what Swor's introduction of Schultz to Two Feathers directly harmed the people that Schultz later brought, later defrauded. So if I introduce you to ---- I don't want to use a judge on that. I'll use Judge Kaczynski. I introduce you to Judge Kaczynski knowing he's a con man, and he later cons you, but I don't profit from the scheme because I've decided I no longer want to deal with him. I'm not liable for restitution under those circumstances. I don't think so. I mean, and that's the basis of Swor's argument. It's like he wasn't involved in that deal. And what Judge Molloy found was that it was reasonably foreseeable that if you introduce someone to a con man, that they're going to bilk somebody. But he ---- I mean, it's not an ---- is there any evidence that Swor even knew of the second scheme or anything? No. There's nothing in the record in Swor. Neither Swor nor Schultz nor Two Feathers say that Swor knew anything about the second scheme. And that's the issue. Swor was completely unaware of it. And ---- I guess I'm not sure why it matters. So you ---- I guess your argument then is because he introduced them and they later bilked somebody. No, no, no. That's not an argument. It's a question. I don't, you know, I don't know why it matters whether he did or didn't know. He introduced them to a con man, sort of like introducing them to a dangerous toy or a dangerous device. Do you have to know which way somebody is going to get hurt by it? You know, you handed them over to be bilked. Why do you have to know precisely how he gets bilked? Well, you know, Schultz didn't get bilked. He was the bilker. Well, but in this case ---- and he has to make restitution, too. But that wasn't one of the ---- that's not one of the arguments you're making here, is it? Wasn't the argument you're making that it wasn't reasonably foreseeable? It wasn't reasonably foreseeable that the people that Schultz was going to bilk should be attributed to Swor. The guidelines say in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts or omissions of others in furtherance of the jointly undertaken criminal activity are attributed. That's right. Is your position that it's not jointly undertaken or that it's not reasonably attributable? First, it's not jointly undertaken. And second, that it's not reasonable to foresee that something that's going on down the road should be attributed to the guy who first introduces them to it. I haven't ---- aren't there a whole bunch of Ninth Circuit cases that say that money kept by co-conspirators is reasonably foreseeable? Yeah, but the ---- Schultz is not Swor's co-conspirator. No, but Two Feathers is Swor's co-conspirator, isn't he? Well, that's interesting, because Two Feathers was actually indicted under four separate indictments. One of them ---- But, in fact, if he had been able to be found guilty, he was not found responsible for what was said, essentially, a second different conspiracy. That's right. So, as I said, Two Feathers was responsible for four separate conspiracies, four separate indictments involving four separate co-conspirators. There's no indication that Swor was a co-conspirator of Two Feathers in his Schultz conspiracy. He wasn't. He had nothing to do with them. He was involved with Two Feathers in a separate conspiracy. Schultz was involved in a separate conspiracy. A couple of other people who were later indicted were in a separate conspiracy. I mean, the whole ---- Am I correct in thinking the money here doesn't go to Schultz in any of that? No, it doesn't. The 166,000 that your client is on the hook for under the district court order would eventually go to the victims of the ---- Schultz's victims, right. Schultz's victims. The statute actually says directly and proximately harmed, isn't that what it says? It does. Both. Yes. It doesn't say ---- I mean, you ---- certainly your client was a but-for clause of the harm, but that isn't what the statute says. I mean, you would agree that it was a but-for clause. If he hadn't introduced them, it wouldn't have happened in all probability. In all probability. So if this were a civil suit and your client were being sued, you're saying that the trial court should have thrown out the case because there was no proximate causation? There was an intervening cause that broke the chain? That's right. A subsequent intervening cause, right. I don't want to take you back to torts class, but wouldn't that be a hard argument   that they ---- you can blend them all together? In this case, the United States has not asked for retribution from the ---- restitution, rather, from the other co-conspirators the Two Feathers had to pay for the other restitution amounts for all the victims in the various conspiracies. The only tie here between Schultz and Swor is that they happen to know each other and Schultz asked to be introduced to Two Feathers and Swor did. But that was the end of it. I know you don't appear here as a torts lawyer, but see if you can get to my ---- if the standard is proximate cause, which is what you said at the beginning, and this were a torts case, would Schultz not be able to claim? Put aside all the other defenses and pari de lecto, et cetera. Okay. Would Schultz not be able to claim that his losses were proximately caused by Mr. Swor introducing him to Mr. Two Feathers with evil intent? Because I think that's the argument you've got to be making, isn't it? I guess what it comes down to is, can Schultz say unless Swor had introduced me to Two Feathers, I would have never dealt with these other people? This is a bad scheme I never thought of. These guys got me together to ----  ---- got and introduced me to this other group of people. I still don't understand the scheme, but that's a separate issue. Unfortunately, they didn't either. They didn't either. That's why they got caught. And they eventually ---- and Schultz said, hey, this is a great idea. I can do this, too. I guess the basis of my argument is that it's too ---- the link between the conspiracy that Schultz and Two Feathers later cooked up is too attenuated to apply. That's exactly what the concept of proximate cause is. Right. It's kind of a policy decision that at some point is just too attenuated. Right. Where do you draw the line? And I think that the line is here. Judge Malone, I have different positions on where that line should be drawn. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. I'm Carl Ross, dead with the U.S. Attorney's Office out of Great Falls. And I have the distinction of prosecuting all of these cases, including Mr. Schultz, who was prosecuted not in the Missoula division, but in the Billings division. So I can give you some background on that if it's of interest. Our position is that it's the same as that of Judge Malloy, which is that it would have been totally serendipitous if Mr. Schultz had gotten together with Mr. Two Feathers. That's a but for a cause. All right. But the language is directly and proximately harmed. Okay. All right. And then I would like to correct one thing in the record, Judge Berzon, though, and that is that Mr. Schwartz had no idea what Mr. Two Feathers was up to with regard to the second scheme. In Mr. Schwartz's excerpt of record at page 8, he included a bunch of the discovery that had gone out. It really wasn't before the district court, but it is now before this court. And you can see in that discovery at that excerpt of record page that Mr. Schwartz knows exactly about the stripped treasury. He approached another victim, a man named Balls, B-A-L-Z, to – that talked about the stripped treasury. So it shows Mr. Swartz in September of that year had knowledge of the same scheme that took Mr. Schultz's money. But out of the fact that they were doing it at that time later on. In fairness, I have no indication that Mr. Swartz and Mr. Schultz were discussing that scheme, but we don't want to leave the Court with the impression that Mr. Swartz has clean hands. Kagan. So how far does this theory go? I mean, if you have some, you know, drug dealer who introduces – drug intermediary introduces somebody to a drug dealer and 10 years later they sell drugs to that guy, does that count? No. Is it the time? What's the difference? Well, I think there's a number of factors. I don't think that there is a bright line. If there is, I'm not either imaginative or smart enough to know where it is, especially in fraud cases, I would emphasize that this Court has regularly indicated that fraud cases and scheme, common scheme cases are different than drug cases. But that's not a common scheme. That's the problem here. I mean, he's out of the scheme and it's a different scheme than the one he was in. Whether he knew about the idea of the scheme or not is a different story. But it's different people, different time. Could it be charged as the same conspiracy? Yes. It probably could have. How many months later was the scheme about which the restitution comes in? The meeting with Mr. Schultz took place in March, and that's when Mr. Schultz met with Two Feathers and swore. I would emphasize there, too, at Excerpt of Record 18, which was Mr. Schultz's statement, that there was discussed all sorts of lending, as I think the quote is. Two Feathers told Schultz that the non-compete letter that was about to expire, he had ideas that were generating funding for all types of projects, which suggests to me that this was a much more free-flowing. But you can answer my question. How long after was it? Oh, I'm sorry, Your Honor. Then he comes back in August. Schultz comes back to Two Fathers in August. So it's March to August. Yes, sir. All in the same year. From the first meeting to the second meeting. And two Feathers and the third guy part company. They allegedly part company in the first meeting. There's nothing to the contrary, right? Pardon me? There was no evidence to the contrary that they didn't. Well, like I say, Your Honor, I think that the Excerpt of Record at page 8 suggests it's at the contrary, because Mr. Swore in September is talking about the stripped Treasury proposal put on by Two Feathers. So even though they might have dissolved this DTF idea of leveraged bonds, it appears that Mr. Swore and Mr. Schultz or Mr. Two Feathers are still together in September at some level. So what's the practical effect in this case if we were to reverse or vacate this restitution order? Very little, Your Honor. I doubt these victims will ever see any money. No. I guess I was trying to look at it from a different perspective. Assume there is money. Okay. This money all flows through to the victims to the extent you can find it. Is that right? Pardon me? This money all flows through to the victims to the extent you can find it. Mr. Schultz doesn't get to keep any of it. No. The judge didn't want to give the money to Mr. Schultz and not have it go automatically to his victims, if there's ever any money. I don't know whether all the co-conspirators are in Pecunias. That's a separate issue. Schultz was never a co-conspirator with Two Feathers on anything, other than he put the last of it. Schultz had taken $700,000 from victims. He spent $500,000 to sustain his lifestyle. He had $200,000 left, and he put it with Two Feathers. That's how this thing connects. So Schultz is Two Feathers' victim. Schultz was hoping that the reward he would obtain would cover the money he'd taken from his victims. Are we reviewing a legal issue or a factual issue here? I think it's generally factual, Your Honor, more so, because I don't think that there is, like I said, there's no legal bright line that I can discern in fraud cases as to where one fraud becomes, when you're working with the same people at the same time, where one fraud stops and all of a sudden you don't have any responsibility for what you're doing. You're not working with the same people at the same time. That's the problem. It was a different time and it was different people. Schultz was not direct – I mean, Swore was not involved in the second transaction directly, and he was, I mean, at least the record indicates, not involved directly with the scheme of fraud. And it was a somewhat different scheme. So it seems to me it is a legal question, which is essentially is the fact, and to me the question is, is the fact that this was but for a cause and that there was some time adjunctive, I mean, that was close in time, sufficient, because that's what you've got. You've got he introduced him and it wasn't too long afterwards. Yes, Your Honor. And I don't think that there is purity like the Court would want when you talk about two different schemes. Swore and Two Feathers want money from whoever they can get money from. And so they – to say that they're proposing one platform and if you don't like that, we've got another platform for you. But it's not we. You keep saying it as if it was we the second time, and it wasn't. Swore wasn't there. Well, he wasn't there, Your Honor, but he was part of the first meeting where it wasn't just one platform being discussed. So let's assume this fact, because I want to get your answer to this thing, and make it a tort suit. Okay. Which is not my area, Your Honor. No, but when you start throwing words like proximate cause around, it seems to me that they incorporate tort doctrines. Right. Mr. Swore and Mr. Two Feathers meet with Mr. Schultz and they propose a bunch of schemes. None of them pan out at that point. Right. They don't go with anything. They ignore Mr. Two Feathers, break their bonds, call it quits between each other. Let's assume that for the moment. Okay. I'll assume that. It may not be the facts, but I want to ask you this one. They break up. Mr. Swore then goes on with one of the schemes that was at least discussed, or a variant of it, to Mr. Schultz and says, have I got a deal for you, Mr. Schultz invests in it. Let's assume he's an innocent guy, because we also know that's not true. Could he sue Mr. — could he sue Mr. — my statement in the last one was Mr. Two Feathers puts him together in that deal. Could he sue Mr. Swore for the introduction? Yeah. I doubt it, Your Honor. Well, if that's so, then how are his losses proximately caused? Because it is still a matter of the introduction tied in time, and again, we're not talking about a specific one. I don't know about suing him, saying you got me into this, because then I'd have to know what promises Swore made directly to Schultz. We have a record here which says they got together and they discussed a bunch of cockamamie schemes, all of which sound exactly the same to me, notwithstanding the fact that they have different letters in front of them. They all involve some sort of securities deal that people are going to make money off of. Right. And two of these guys break up somewhere along the way, and later on Two Feathers consummates one of these schemes with Mr. Schultz. Is there liability for that scheme on the part of Mr. Two Feathers? What I'm having difficulty with, Your Honor, is I'm unsure of the civil standard for liability versus what I think the mandatory restitution is.  I think it's a lesser standard, because the motivation for the restitution statute is to make victims whole, not to make, not to allow people to sue for ontortious theories. Is there any relevant case law on what directly and proximately harmed means? Pardon me, Your Honor? Is there any relevant case law on what directly and proximately harmed means? I don't believe that there's any consistent case law, Your Honor, because I think it's all fact-based, and that's why I believe that the abuse of discretion standard is the most appropriate here. Thank you very much, Your Honors. I believe you are out of time. Would you like a minute for rebuttal? No? Unless you have any further questions, I'll have it submitted. Thank you. Thank you. I'm sorry, you must answer me.
judges: Kozinski, Berzon, Hurwitz